UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NORMA T.,[1] | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-01985-MJD-WTL ) |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Norma T. applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on October 25, 2013, alleging an onset date of September 15, 2013. [Filing No. 6-7 at 2.] On November 4, 2013, she applied for supplemental security income ("SSI"). [Filing No. 6-7 at 4.] Her applications were initially denied on January 31, 2014, [Filing No. 6-5 at 2; Filing No. 6-5 at 6], and upon reconsideration on June 2, 2014, [Filing No. 6-5 at 17; Filing No. 6-5 at 24]. Administrative Law Judge B. Lloyd Blair conducted a hearing on November 12, 2015, [Filing No. 6-2 at 44-61], and issued an unfavorable decision on January 19, 2016, [Filing No. 6-4 at 56]. On January 30, 2017, the Appeals Council vacated the January 19, 2016 decision and remanded Norma T.'s applications to an Administrative Law Judge. [Filing No. 6-4 at 82-83.] Administrative Law Judge Shane McGovern (the "ALJ") conducted another hearing on July

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

14, 2017. [Filing No. 6-3 at 5-70.] The ALJ issued a decision on September 21, 2017, concluding that Norma T. was not entitled to receive DIB or SSI. [Filing No. 6-2 at 8.] The Appeals Council denied review on May 12, 2018. [Filing No. 6-2 at 2.] On June 28, 2018, Norma T. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[2] "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the

---

[2] The Code of Federal Regulations contains separate, parallel sections for DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

3

appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Norma T. was 50 years of age at the time she alleged her disability began. [Filing No. 6-7 at 2.] She has completed four years of college, earned a real estate license, and previously worked in administration and property management. [Filing No. 6-8 at 17-18.][3]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Norma T. was not disabled. [Filing No. 6-2 at 26.] Specifically, the ALJ found as follows:

- At Step One, Norma T. had not engaged in substantial gainful activity[4] since September 15, 2013, the alleged onset date. [Filing No. 6-2 at 14.]

- At Step Two, she had "the following severe impairments: diabetes type II; degenerative changes of the spine, acromegaly and pituitary gigantism; hypothyroidism; plantar fasciitis; major depressive disorder; panic disorder without agoraphobia; mild neurocognitive disorder and cognitive disorder [not otherwise specified]." [Filing No. 6-2 at 14 (internal citations omitted).]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 6-2 at 16.]

- After Step Three but before Step Four, Norma T. had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; no exposure to excessive vibration, moving mechanical parts or unprotected heights and limited to simple, repetitive and routine tasks free of a production rate pace and free of quotas which rely more on end of day goals; limited to low stress jobs

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- defined as not requiring the worker to cope with work related circumstances that could be dangerous to the worker or others and occasional interaction with coworkers, supervisors and the public." [Filing No. 6-2 at 18.]

- At Step Four, relying on the testimony of the vocational expert ("VE") considering Norma T.'s RFC, she was incapable of performing any of her past relevant work as an apartment house manager trainee or customer service representative. [Filing No. 6-2 at 24.]

- At Step Five, relying on VE testimony considering Norma T.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision in representative occupations, including as a private sector mail sorter, collator operator, and routine clerk. [Filing No. 6-2 at 24-25.]

## III.
### DISCUSSION

Norma T. contends that the ALJ improperly found Norma T.'s self-described limitations not credible. Specifically, Norma T. asserts that the ALJ improperly relied on stale opinion evidence, sporadic daily activities, and selective reference to the record. Norma T. also contends that the ALJ did not (1) identify any objective evidence that was inconsistent with Norma T.'s described limitations or (2) provide a logical bridge from the evidence to the ALJ's conclusion that Norma T.'s statements were not credible. Norma T. further contends that the ALJ failed to acknowledge Norma T.'s strong work history when evaluating her credibility.

As noted above, an ALJ's credibility evaluation is accorded considerable deference. Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the Court] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). On March 28, 2016, SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *2, became effective, replacing SSR 96-7p, and providing new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated. Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." *Id.*

5

The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). The standard remains whether the ALJ's assessment was patently wrong. The ruling specifies that the SSA uses "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms," but continues to utilize the regulatory factors relevant to a claimant's symptoms, including daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8; 20 C.F.R. § 404.1529(c)(3).

As an initial matter, the Court agrees with the Commissioner that Norma T. has limited her appeal to challenging the ALJ's RFC assessment of her mental limitations, which includes an evaluation of her subjective statements related to her mental impairments. *See* [Filing No. 16 at 4.] Norma T. has not raised any argument related to an evaluation of her physical RFC. Accordingly, the Court will focus exclusively on the ALJ's mental RFC assessment.

"The regulations require that an ALJ's RFC be based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009) (citations omitted); *see* 20 C.F.R. § 404.1529; 20 C.F.R. § 404.1545. "Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa,*

569 F.3d at 1171; see *Outlaw v. Astrue*, 412 F. App'x 894, 897 (7th Cir. 2011) ("RFC determinations are inherently intertwined with matters of credibility, and we generally defer to an ALJ's credibility finding unless it is 'patently wrong.'") (quoting *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Put another way, the ALJ's RFC determination provides the context for any adverse credibility assessment of the claimant's statements, because it provides the starting point in the comparison. To the extent that the ALJ's RFC determination is consistent with the claimant's subjective statements, the ALJ has inherently credited those statements. An adverse credibility evaluation is a rejection of the claimant's subjective statements that conflict with the ALJ's RFC determination.

Here, the ALJ partially credited that Norma T. had limitations based on her severe mental impairments. In relevant part, the ALJ found that Norma T. was:

> limited to simple, repetitive and routine tasks free of a production rate pace and free of quotas which rely more on end of day goals; limited to low stress jobs defined as not requiring the worker to cope with work related circumstances that could be dangerous to the worker or others and occasional interaction with coworkers, supervisors and the public.

[Filing No. 6-2 at 18.] When assessing a claimant's subjective statements, the ALJ is instructed to consider opinions offered by medical sources about the claimant's subjective symptoms and their limiting effects. SSR 16-3p, 2017 WL 5180304, at *6-7.

### A. The Opinion Evidence

Concerning Norma T.'s mental functioning, the ALJ gave "significant weight" to the opinion of a consultative examiner, psychologist Kent A. Hershberger, Ph.D. [Filing No. 6-2 at 23.] On December 16, 2013, Dr. Hershberger interviewed Norma T. about her educational, vocational, medical/psychiatric, and personal history, and reviewed her current prescription medications. [Filing No. 6-23 at 83-84.] Norma T. explained that she had worked for eight years

7

in the mortgage department of a bank, four years as a realtor, and then most recently for two and half years as a property manager, but that she had been unsuccessful in her attempt to perform that kind of work with another company—ending after four months—because she couldn't do the job, got stressed out, and couldn't return. [Filing No. 6-23 at 83.] Dr. Hershberger also performed a mental status evaluation of Norma T. and provided a medical source statement based on the interview and examination:

> She would be able to get along with coworkers and supervisors without undue difficulty. She would learn new vocational skills more slowly than her average peers. She is capable of taking simple instructions from a supervisor. She is capable of performing simple repetitive tasks. Her stress tolerance is believed to be about average at the present time. Her cognitive functioning appears to be impaired based on her prior functioning, but would not preclude employment.

[Filing No. 6-23 at 86.][5] On January 22, 2014, Dr. Hershberger administered formal memory testing of Norma T. [Filing No. 6-23 at 88-96.] Dr. Hershberger summarized the results, "[h]er memory functioning is within the Average to Low Average range. This is still clearly a decline for her but does not preclude all employment." [Filing No. 6-23 at 96.] Dr. Hershberger also reiterated the medical source statement cited above after the testing. [Filing No. 6-23 at 97.]

Norma T. takes issue with the ALJ relying on Dr. Hershberger's assessment—made almost four years prior to the ALJ's decision—because the evaluation did not appear to be based on a review of much of the existing medical records and preceded "approximately 560 pages of medical evidence that became part of the record *after* Dr. Hershberger's evaluation." [Filing No. 10 at 18 (emphasis in original).] The Seventh Circuit has held that an "ALJ should not rely on an outdated

---

[5] The ALJ concluded that Norma T. could not return to any of her past relevant work, which involved skilled and semi-skilled tasks with significant interaction with others. [Filing No. 6-2 at 24.] As noted above, the ALJ found that Norma T. could perform unskilled, low-stress work, with reduced interaction with others. The record does not indicate that Norma T. has ever attempted to perform work matching those parameters.

8

assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment") (additional citations omitted)).

However, Norma T. does not identify any conflicting evidence in the updated record that would have rendered the opinion stale. The Court's own review does not find any significant evidence that suggested that the opinion—based on interview, examination, and testing—was no longer a reliable estimate of Norma T.'s functioning. Conversely, a neurological evaluation completed in August 2014 found no "significant neurological problem." [Filing No. 6-25 at 58.] The neurologist discussed with Norma T. his belief that pseudodementia secondary to depression "likely is playing a major role in her cognitive complaints and I have encouraged her to pursue more aggressive treatment for her depression." [Filing No. 6-25 at 58.] After establishing dedicated treatment for her mental impairments, the most recent treatment record indicated that Norma T. "hasn't been depressed since we increased her dose of sertraline to 150 mg daily." [Filing No. 6-33 at 3.]

The ALJ summarized the updated evidence including "[l]ater examinations [that] showed no deterioration in her condition, with signs of strong cognitive functioning." [Filing No. 6-2 at 21.] The ALJ also summarized objective evidence that showed—despite reported fatigue—that Norma T. had preserved memory and cognitive functioning, as well as pleasant and cooperative presentation with good grooming and hygiene. [Filing No. 6-2 at 22.] Norma T. does not identify potentially dispositive evidence favorable to her claim that was not reviewed by the ALJ. The ALJ does not have a duty to mention every piece of evidence but must acknowledge potentially

9

dispositive evidence, since the "ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985). Even "a sketchy opinion [that] assures us that the ALJ considered the important evidence, and [. . .] enables us to trace the path of the ALJ's reasoning, [. . .] has done enough," because according to the substantial evidence standard the "difficulty of dealing with conflicting medical evidence is no reason to take the task lightly—not for us, and not for the ALJ." *Id.* As Norma T. points out, the ALJ "acknowledged that [Norma T.] continued to have clinically demonstrated anxious mood and blunted affect, with tremors related to her anxiety, and some memory deficit and psychomotor retardation, despite improvement in her panic attacks." [Filing No. 10 at 19-20 (citing Filing No. 6-2 at 22).] The most recent treatment record indicated control of Norma T.'s depression and good sleep with medication, as well as no "full-blown panic attacks in months." [Filing No. 6-33 at 3.] The record also indicated that she had "been under a lot of stress" with selling her house, buying a condominium, and moving to a different city. [Filing No. 6-33 at 3.] The recent stressors caused her to be "overwhelmed," which resulted in her developing a tremor over the last couple of days that she believed was related to anxiety. [Filing No. 6-33 at 3.]

Contrary to Norma T.'s contentions, the Court does not find the ALJ's acknowledgment of ongoing symptoms inconsistent with his conclusions. As the ALJ explained:

> Thus, in considering the claimant's lack of an ongoing cognitive disorder and the lack of imaging showing brain deterioration consistent with a cognitive disorder, but considering the claimant's other severe mental impairments, the undersigned limits the claimant to simple, routine, repetitive tasks free of a production rate pace and free of quotas which rely more on an end of day goals and limited to low stress jobs.

[Filing No. 6-2 at 22.] The ALJ did not determine that Norma T. was symptom free, but rather assessed RFC limitations that were consistent with her ongoing issues demonstrated by her subjective complaints and the objective evidence.

Regarding the opinion evidence specifically, the ALJ rejected the reviewing consultant's opinion that Norma T. was capable of work involving semi-skilled tasks and relating to coworkers and supervisors on at least a superficial basis. [Filing No. 6-2 at 23.] The ALJ explained:

> More weight is given to the narrative explanation of Dr. Hershberger because it is more consistent with the record as a whole, including the claimant's low average to average memory testing, mild cognitive and neurocognitive deficits with evidence of slowed speech and some more recent evidence of tremors due to stress and depression.

[Filing No. 6-2 at 23 (The ALJ also explained that Dr. Hershberger's evaluation was consistent with the updated record, including a 30/30 on a mini-mental status examination showing unimpaired cognition and Norma T.'s preserved presentation).] The ALJ did not simply rely on an outdated assessment. The ALJ compared Dr. Hershberger's opinion with the updated record and found the assessment consistent with the evidence. "More importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). Accordingly, the Court can trace the ALJ's logic.

### B. Activities of Daily Living

The Court does not find reversable error based on the ALJ's consideration of Norma T.'s activities of daily living. As noted above, the regulations instruct the ALJ to consider Norma T.'s activities of daily living in evaluating her subjective symptoms. The Seventh Circuit has repeatedly held that an ALJ should not equate the performance of activities of daily living with the ability to meet the demands of full-time work and the ALJ must consider any qualifications

11

concerning the claimant's ability to perform activities of daily living. *Clifford*, 227 F.3d at 872; *Gentle v. Barnhart*, 430 F.3d 865, 867-868 (7th Cir. 2005); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). "But the ALJ did not do this. Rather, the ALJ considered [Norma T.'s] description of [her] daily activities in assessing whether [her] testimony about the effects of [her] impairments was credible or exaggerated." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (citing 20 C.F.R. § 404.1529(c)(3)(i) (explaining that agency will consider daily activities in evaluating severity of claimant's symptoms).

The ALJ reviewed Norma T.'s activities of daily living, noting that she was able to perform personal care independently, pick up items around the house, do the dishes, and some cooking, including expressing interest at one point in taking cooking classes. [Filing No. 6-2 at 22.] The ALJ also noted that Norma T. talked to a couple of friends monthly. [Filing No. 6-2 at 22.] The ALJ acknowledged that Norma T. testified "at the second hearing that her daughter helps her with groceries and she has trouble washing dishes for a long period." [Filing No. 6-2 at 17.] The ALJ explained that "[a]lthough the claimant's activities of daily living do not necessarily equate with the ability to engage in continuous, full-time work, the undersigned does consider them in assessing the residual functional capacity for functional purposes." [Filing No. 6-2 at 22-23.] For example, in *Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013), the Seventh Circuit found the ALJ's use of daily activities appropriate to demonstrate that Pepper had the capacity for sustained focus in contrast to her alleged difficulties with concentration. Norma T.'s activities demonstrated some ability to focus on and complete simple, routine tasks, interact with others, and manage the stresses of maintaining a household. Those capabilities were at least probative of her ability to meet the limited demands inherent in the ALJ's RFC assessment.

### C. Work History

The Court also does not conclude that the ALJ's treatment of Norma T.'s work history—either as stand-alone proposition or in combination with any other faults—rendered the ALJ's subjective symptom evaluation patently wrong. "An ALJ is not statutorily required to consider a claimant's work history, but 'a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) (quoting *Hill v. Colvin,* 807 F.3d 862, 868 (7th Cir. 2015); *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir. 1983)). The ALJ explained his adverse credibility determination, in part, based on Norma T.'s ability to earn substantial gainful activity after her remote brain surgery for pituitary dysfunction. [Filing No. 6-2 at 20.] The work activity preceded Norma T.'s alleged onset date and does not account for the possibility that her impairments—particularly Norma T.'s acromegaly and resulting joint pain—were progressive in nature. Norma T.'s willingness to continue to work after a significant, life-altering illness should have bolstered rather than undermined her credibility. The Seventh Circuit has held that "a claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014). Norma T. has not raised any challenge to her physical RFC. As it pertains to her mental functioning, the record demonstrates that Norma T. had cognitive decline as result of her experience and was no longer functioning at a premorbid capacity, which has contributed to her depression. Had the ALJ determined that Norma T. was able to perform her past work at Step Four, the failure to acknowledge her efforts to continue working would be more significant. *See* note 5. However,

there was no evidence that Norma T. attempted to transition to work that matched the parameters of the ALJ's mental RFC finding.

As noted above, the ALJ's adverse credibility determination is not evaluated in a vacuum but in the context of the ALJ's RFC finding and material conclusions at each step of the sequential evaluation. Under the deferential standard, an ALJ's subjective symptom evaluation need not be perfect. In *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011), the Seventh Circuit explained "[a]lthough we find some deficiencies in the ALJ's discussion of McKinzey's credibility, we conclude that the ALJ has pointed to sufficient evidence in the record to justify [his] negative determination." As detailed above, the ALJ sufficiently provided record support for his evaluation, including reliance on opinion evidence, objective signs, and the updated records showing good response to treatment of Norma T.'s mental impairments. Accordingly, the Court does not find the ALJ's credibility determination was patently wrong.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Norma T. to reverse the ALJ's decision that she was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

SO ORDERED.

Dated: 9 MAY 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles Robert Goldstein
SOCIAL SECURITY ADMINISTRATION
charles.goldstein@ssa.gov

Karl E. Osterhout
OSTERHOUT DISABILITY LAW, LLC
karl@mydisabilityattorney.com

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov